UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARION JOHN HOFMAN,

                Plaintiff,

                v.

COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**18CV6382**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 16 (plaintiff), 22 (defendant Commissioner)). The parties consent to proceed before a Magistrate Judge (see Docket No. 9). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reserved decision without oral argument and reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff (Mr. "Marion Hofman" or "plaintiff") filed an application for disability insurance benefits on January 20, 2015 [R. 10], alleging disability from January 1, 2008. That application was denied initially. The plaintiff appeared before an Administrative Law Judge

("ALJ"), who considered the case de novo and concluded, in a written decision dated April 14, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 26, 2018 [R. 1], when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on May 23, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 16, 22), and plaintiff duly replied (Docket No. 23) by June 6, 2019, deadline (Docket No. 21). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 47-year-old with a limited education, had no past relevant work [R. 18], but he reported work experience doing masonry work and as a pizza maker and roofer (Docket No. 16, Pl. Memo. at 5; [R. 169]). Plaintiff had no earnings since 2002 (Docket No. 22, Def. Memo. at 2; [R. 162]). He contends that he was disabled as of January 1, 2008, following a 2007 automobile accident. Plaintiff applied for disability in 2009, which was granted for neck and back impairments [R. 76-81], but the ALJ found that plaintiff was now claiming different impairments in the 2015 application from the 2009 application, thus denying res judicata effect to the 2009 decision [R. 10]. Plaintiff was incarcerated in August 2012 to January 2015 and lost Social Security disability benefits [R. 194; see R. 18].

Plaintiff reapplied for disability benefits following his release in 2015 [R. 194] in the present application. The following impairments were deemed to be severe by the present Administrative Law Judge (or "ALJ"): degenerative disc disease, cervical and lumbar [R. 12]. Plaintiff also claimed asthma, hypertension, hepatitis C, and a history of polysubstance abuse, all

2

found not to be severe by the ALJ. Plaintiff's 2015 application was denied initially. Plaintiff appeared before the ALJ who considered the case de novo and concluded, in a written decision dated April 14, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 26, 2018, when the Appeals Council denied plaintiff's request for administrative review.

## MEDICAL AND VOCATIONAL EVIDENCE

During his November 1, 2016, hearing, plaintiff argued that his cervical spine surgery was ineffective and that he still had severe spinal impairments [R. 30].

After declining to give a November 2009 disability finding for back injury [R. 76, 78-80] preclusive effect [R. 10], the ALJ in this application found that medical evidence fell short of indicating a back impairment under Listing 1.00, musculoskeletal system impairment [R. 14].

The ALJ then found that plaintiff had a residual functional capacity to perform light work, limited to occasional pushing and pulling with upper extremities and occasional overhead reaching bilaterally. Claimant's capacity prohibited him from climbing ladders, ropes, and scaffolds; limited him to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, among other limitations. [R. 14.] With this capacity, plaintiff was deemed unable to perform most light work. The ALJ posed hypotheticals to the vocational expert posing a claimant with plaintiff's age, education, work experience, and residual functional capacity and the expert opined that a claimant like plaintiff could work as an information clerk, routing clerk, and a furniture rental consultant, all light exertion work [R. 19, 53-54]. With that hypothetical modified to a claimant with sedentary exertional level, the expert opined that this claimant could work as an order clerk, telephone quotation clerk, or an addresser [R. 54-55]. If

a hypothetical claimant had to be off task beyond ten percent or absent for more than two days per month, the vocational expert found that there was not work at a competitive rate and not any work available to such a claimant [R. 55-56]. Plaintiff then asked the vocational expert if a claimant with plaintiff's age, education, and limited work history needed to sit for four hours a day but stand for only two hours a day whether the opined positions still would be available; the expert concluded that such a claimant would not be working full time or at a competitive rate [R. 56]. Because of these opinions, the ALJ found that plaintiff not to be disabled [R. 20].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standards*

    A.    General Standards and Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

5

1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

B.  Treating Physician Rule for pre-March 2017 Claim

Plaintiff's January 2015 claim predates changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. § 416.927 (2017), such as this one. The current version of the SSA's regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. § 416.920c (see also Docket No. 22, Def. Memo. at 17 n.2). E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R.

§ 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

### C. Estoppel Effect of Prior Disability Findings and Rulings

Under Social Security regulations, the ALJ must give collateral effect to findings made in an earlier application, 20 C.F.R. § 416.1450(f). Under that provision, "an issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties," the ALJ will not consider the issue again "but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong," id. (see Docket No. 16, Pl. Memo. at 13). The ALJ needs to defer to the finding of fact made in a previous determination involving the same parties unless there are reasons to believe that the former finding was wrong, Chiaramonte v. Sullivan, No. 90 C 2618, 1991 U.S. Dist. LEXIS 5193, at *9 (N.D. Ill. Apr. 19, 1991).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. A preliminary issue is the impact of a prior disability finding on a condition now claimed by plaintiff in this application.

7

I.      Collateral Estoppel

At Step Four of the five-step analysis, plaintiff contends that the ALJ erred in not granting his 2009 decision granting disability estoppel effect in the present 2015 application (Docket No. 16, Pl. Memo. at 13-15; see also Docket No. 23, Pl. Reply Memo. at 7 (relying upon this argument)). Plaintiff argues that he claimed the same impairments in 2009 and 2015 for cervical impairments, thus the finding of disability in 2009 should have estoppel effect on his 2015 application. Plaintiff's spinal impairments were found in 2009 [R. 78-80] and had to be accepted for his 2015 application. (Docket No. 16, Pl. Memo. at 14-15.) Defendant Commissioner responds that plaintiff's prior case was an SSI application from February 2008 through November 2009 and the present application was plaintiff's claim from 2015, with different timeframes, that preclude res judicata and collateral estoppel (Docket No. 22, Def. Memo. at 25). Given the different timeframes, defendant argues that the ALJ properly did not give collateral effect to the 2009 decision on the 2015 claims because the medical facts differed (id.). Plaintiff alleged mental health issues in 2015 that differ from the physical ailments claimed in 2009 (id.).

Defendant is correct that most of plaintiff's 2015 impairments are not estopped by the 2009 decision because different conditions are claimed in 2009 and 2015. Plaintiff's present arguments, in fact, only focus on his back impairments, the one common claim arising from the 2007 accident that was deemed to be disabling in 2009.

Brief review of the first ALJ's decision in 2009 reveals that the ALJ reviewed MRI examinations of plaintiff's cervical spine before and after surgery following the 2007 accident [R. 78-79]. This ALJ noted that plaintiff wore a neck collar and used a cane [R. 79], that he was

treated with physical therapy, chiropractic treatment, and pain medications "but he continues to suffer from pain despite treatment" [R. 79]. This ALJ concluded that "the record as a whole clearly shows that the claimant has very significant medical problems causing an inability to perform substantial gainful activity" [R. 79]. The ALJ then considered the finding of non-disability by the state agency medical consultants, but relied upon treating sources and plaintiff's testimony that he was far more significantly limited [R. 79].

The second ALJ, however, implicitly found that the 2009 finding as to plaintiff's spinal limitations was wrong [R. 10, 14-16]. Instead, the ALJ argued that the same facts and same issues were not presented in plaintiff's 2015 application [R. 10]. This is **in error**. As noted by another district court, "the Commissioner's regulations do not permit an ALJ in a subsequent decision to simply ignore or reconsider earlier decisions, or reweigh the factors or evidence that was previously considered and resolved as final in the earlier finding unless her good cause is satisfied," Hoffman v. Colvin, No. 2:11-cv-2338 EFB, 2014 U.S. Dist. LEXIS 88171, at *20 (E.D. Cal. June 25, 2014) (Brennan, Mag. J.). Here, the ALJ in 2015 has reweighed the 2009 evidence and determined that plaintiff's cervical condition was not disabling.

While plaintiff raises other impairments (including mental health ailments) in this new application that were not considered before, the impairment that should have collateral effect is his spinal impairments. The only reason plaintiff's back impairment was at issue in 2015 was because of the termination of his 2009 back disability benefits upon his incarceration in 2012, see 20 C.F.R. §§ 416.1325(a) (benefits suspended when claimant resides in a public institution, defined in § 416.201), 416.1335 (terminated after over twelve months in residence); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008) (incarceration is in public institution for

9

§ 416.1325). Plaintiff was in a "public institution" during his incarceration from August 2012 to January 2015 [R. 194], thus could not have automatic renewal of his cervical disability benefits after his discharge, see Stubbs-Danielson, supra, 539 F.3d at 1172 (no resumption of benefits for claimant in public institution beyond twelve months). Another court, considering an incarcerated beneficiary who filed a new application to reinstate her benefits upon release, found that the ALJ properly used the five-step sequential analysis rather than the seven-step medical improvement analysis, Brennan v. Astrue, 501 F. Supp. 2d 1303, 1309 (D. Kan.) (Reid, Mag. J.) (Report & Rec.), adopted, 501 F. Supp. 2d 1303 (D. Kan. 2007). Courts in the Second Circuit (including this district) recognize that our Circuit has not ruled "whether a claimant whose disability benefits are terminated for non-medical reasons is entitled to a presumption that his disability has continued," Richardson v. Astrue, No. 10 Civ. 9356, 2011 U.S. Dist. LEXIS 73429, at *42-43 (S.D.N.Y. July 8, 2011) (citing Singletary v. Astrue, No. 07CV6025, 2008 U.S. Dist. LEXIS 28638, at *6 (W.D.N.Y. Jan. 22, 2008) (Siragusa, J.)); Nelson v. Comm'r, No. 8:14CV983, 2015 U.S. Dist. LEXIS 82971, at *21 (N.D.N.Y. June 26, 2015). Judge Siragusa in Singletary held that the Commissioner was bound by res judicata principles to the earlier grant of benefits to a claimant who (like the plaintiff here) was later incarcerated and had those benefits terminated, 2008 U.S. Dist. LEXIS 28638, at *4-12.

In the present case, the second ALJ in 2015 applied the five-step analysis to plaintiff's new application rather than the seven-step medical improvement standard from the 2009 grant of benefits. Furthermore, that ALJ found that in March 2009 that plaintiff had full range of motion of the cervical spine [R. 16, 258] and did not need to use a cane [R. 16], which was contrary to allegations of deterioration of the cervical spine that led to the earlier disability finding [cf. R.

10

79]. That report, however, noted that plaintiff used a "significant amount of OxyContin for persistent neck pain" and found that plaintiff had "significant neck pain and is taking Percocet and OxyContin" [R. 258]. That report also found that there was "no obvious structural cause for his pain" and had not prescribed narcotic pain medication since September 2008 [R. 258]. But in November 2009, that ALJ found that plaintiff was disabled due to spinal limitations, noting plaintiff's pain and use of a cane and cervical collar [R. 72, 78-79], concluding that the record then "as a whole clearly shows that the claimant has very significant medical problems causing an inability to perform substantial gainful activity" [R. 79]. The 2009 finding of disability cannot be refuted by the ALJ in 2015 based on the same 2009 medical evidence and opinion and the second ALJ cannot render new findings of disability contrary to those found by the first ALJ.

As for subsequent evidence for the 2015 application, the ALJ reviewed plaintiff's 2015 medical record and, while noting reports of moderate degenerative changes, decreased range of motion noted by the consultative examiner, Dr. Harbinder Toor, and tenderness in the cervical and lumbar spine [R. 370, 330, 355, 358, 421-22, 542], the ALJ found that plaintiff's gait was normal and concluded that plaintiff did not need a cane or other assistive devices [R. 16, 390 (April 14, 2015, examination, noting normal gait), 392 (same), 454 (cervical spine tender in Oct. 29, 2015, examination)]. The ALJ does not explain how plaintiff in 2015 did not need to use a cane. Plaintiff also argues that the ALJ failed to reconcile Dr. Toor's opinion and the RFC (Docket No. 16, Pl. Memo. at 18-23, 19-20).

Defendant cites this Court's decision in Lipp v. Berryhill, No. 16CV124, 2018 WL 2901332, at *2 (W.D.N.Y. June 10, 2018) (Telesca, J.) (Docket No. 22, Def. Memo. at 25), focusing on res judicata applying only to deny a claim previously decided by the ALJ. Estoppel

11

under these regulations does not apply merely to deny a claim (but cf. id.). In Lipp, plaintiff argued that the ALJ erred in not allowing that claimant to amend the onset date, id. Plaintiff next asserted a different onset date before the Court that fell outside of prior ALJ determinations, id. at *3. Plaintiff there was arguing that res judicata did not apply or that an exception to res judicata applied where new and material evidence related to the previously adjudicated issue, id. The ALJ found that this objection was barred by the doctrine of res judicata, with which Judge Telesca agreed, id. at *2-3, finding that the Commissioner had considered medical evidence after plaintiff's proposed onset date in the ALJ's first denial and any misstatement of the onset date was harmless error, id. at *3. Judge Telesca also found that there was not new and material evidence tending to show disability, id.

In the case before this Court, there was no new evidence from 2009 denying plaintiff's spinal limitation; instead, the second ALJ reviewed the same evidence from 2009 and came to a different finding than the first ALJ on plaintiff's cervical condition. Again, the only reason for the 2015 application was plaintiff's incarceration from August 2012 to January 2015 terminated his 2009 disability benefits. Under the rules for res judicata, however, the first ALJ's finding of disability is binding upon the second ALJ, 20 C.F.R. § 416.1450(f). Absent new and material evidence that plaintiff's spinal impairment differed from 2009 to 2015 or that his condition significantly changed since 2009, the ALJ was bound by the finding of disability as to that condition. Therefore, plaintiff's motion (Docket No. 16) on this ground is **granted**. Again, this grant is limited to his cervical condition and not to other physical and mental impairments claimed by plaintiff in 2015.

II.     ALJ Consideration of Medical Opinions

For completeness, this Court next considers plaintiff's other arguments. These other objections also are focused on plaintiff's cervical limitations. The three medical sources or consultative source opined on plaintiff's back limitations. The ALJ, however, gave little or some weight to these opinions [R. 17, 18].

A.  Treating Medical Source Opinions

Plaintiff next argues that the ALJ did not correctly evaluate the opinions of treating medical sources (Docket No. 16, Pl. Memo. at 15-18). Plaintiff contends that the ALJ rejected these opinions with only conclusory reasons without citing supporting evidence (id. at 15). Dr. Berthollet Bavibidila treated plaintiff from February to November 2015 ([R. 493-96, 497-500, 501-04]; Docket No. 16, Pl. Memo. at 6-7) and Dr. Stephen Lurie treated him for cervical/lumbar pain from October 2016 ([R. 486-91]; Docket No. 16, Pl. Memo. at 5-6). As noted by the ALJ [R. 17], Dr. Bavibidila opined that plaintiff could walk, stand, and sit for two to four hours [R. 496], while he could lift, carry, push, pull, and bend for one to two hours [R. 496]. Dr. Bavibidila concluded plaintiff was permanently disabled with severe lumbar stenosis and cervicalgia [R. 494]. According to the ALJ [R. 18], Dr. Lurie found that plaintiff could stand and walk for less than two hours, sit for about four hours in an eight-hour workday with breaks in the intervening periods [R. 489].

The ALJ assigned little weight to Dr. Bavibidila's opinion because it was not consistent with findings and failed "to give adequate consideration to the evidence of effective treatment, opiate behavior, and non-compliance" [R. 17]. The ALJ then found Dr. Lurie's mental functioning assessment was not reliable [R. 14] and his physical assessment also was not consistent with findings and did not consider effective treatment, opiate seeking behavior, and

13

non-compliance [R. 18]. While Dr. Lurie's opinions were reportedly based on monthly treatment, the ALJ also did not find that Dr. Lurie's opinions reflected this frequent treatment relationship [R. 18].

Plaintiff argues these rejections were based on conclusory grounds (Docket No. 16, Pl. Memo. at 16, 17, 18; Docket No. 23, Pl. Reply Memo. at 1-4) and without discussing Dr. Bavibidila's March and November 2015 opinions (Docket No. 16, Pl. Memo. at 16-17).

Defendant Commissioner contends the ALJ properly analyzed the medical and opinion evidence in establishing the RFC (Docket No. 22, Def. Memo. at 17). Defendant points out from the record effective treatment, opiate seeking behavior, and non-compliance (id. at 20; [R. 16, 333, 347, 436]), with plaintiff's excessive use of OxyContin and his mother's Percocet (Docket No. 22, Def. Memo. at 20; [R. 16, 258, 345, 433, 442-43, 448, 451, 500]) and plaintiff's prison conduct in seeking medication (Docket No. 22, Def. Memo. at 20; [R. 620]). Plaintiff canceled appointments and failed to attend consultations and pain management treatment appointments (Docket No. 22, Def. Memo. at 22; [R. 16, 363, 423, 448]). Defendant argues that the ALJ properly discounted these opinions because they were inconsistent other evidence and with plaintiff's testimony (Docket No. 22, Def. Memo. at 21) but without citation to plaintiff's contrary testimony.

Plaintiff also replied that his treatment may not have been as effective as the ALJ found [R. 16] because pain specialist Dr. Kevin Walter conducted a myelogram on September 29, 2015, that revealed cervical stenosis and recommended surgery as a result (Docket No. 23, Pl. Reply Memo. at 3; [R. 448]). While the ALJ noted Dr. Walter's comments on plaintiff's desire for opiates [R. 16], the ALJ did not comment on Dr. Walter's observation of cervical stenosis or

14

the recommendation for surgery, concluding that Dr. Walter's opinions were not supported sufficiently by the medical record, assigning little weight to that opinion [R. 17], as he dismissively considered the opinions of Drs. Bavibidila and Lurie.

While the RFC need not correspond to a medical source opinion, see Rudd v. Comm'r, 531 Fed. App'x 719, 728 (6th Cir. 2013); Wilson v. Colvin, No. 16CV6509, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) (Telesca, J.), that assessment must be based upon all the relevant medical and other evidence in the record, 20 C.F.R. § 416.920(e). The ALJ considers treating source opinions on the claimant's residual functional capacity, but the ultimate decision on that assessment rests with the ALJ, id., § 416.927(d)(2). Under these same regulations, the ALJ has several factors to weigh medical source opinions, particularly from treating sources, id. § 416.927(c)(2). These factors include whether that treating source examined the claimant, the treatment relationship with the source, including the length of the treatment relationship, the nature and extent of treatment, and consistency of the opinion with the record, id. § 416.927(c)(1)-(6).

The 2015 medical record indicated plaintiff addressed his pain with medication, including using his mother's medication [R. 16, 333 (symptoms relieved by pain medication), 347, 436]. Given the remand for giving estoppel effect of the 2009 disability determination, the ALJ's consideration of plaintiff's 2015 treating physicians is less relevant absent a finding that his condition improved since 2009 to repudiate the first ALJ's decision. Plaintiff's objections here are **thus moot**. Alternatively, on remand, the ALJ should reconsider the medical opinions in the record, particularly the post-2009 opinions.

B.  State Agency Examiner's Opinions and RFC

Plaintiff also contends that the ALJ should reconcile the conflict between state agency examiner Dr. Toor's May 2015 opinion [R. 368] and the residual functional capacity determination [R. 14, 18] (Docket No. 16, Pl. Memo. at 18-23). This is notwithstanding defendant's current arguments from the medical record which plaintiff deems to be post hoc rationalizations (Docket No. 23, Pl. Reply Memo. at 5), Shelley v. Berryhill, No. 16CV6360, 2017 U.S. Dist. LEXIS 181702, at *11-12 (W.D.N.Y. Nov. 2, 2017) (Telesca, J.).

In April 17, 2008, Dr. Toor found that plaintiff had a difficulty in twisting his neck due to his injury, he had moderate limitations for standing, walking, pushing, pulling, lifting, or reaching, with a guarded prognosis [R. 224]. In 2015, Toor again concluded that plaintiff had a guarded prognosis, with moderate to marked limitation for standing, walking, bending, lifting, moderate limitation for sitting for long time [R. 371]. The residual functional capacity found that plaintiff could perform light work.

The ALJ found that Dr. Toor's April 2008 and May 2015 opinions were based on "isolated examinations of the claimant's condition," but concluded that these opinions "are reasonably consistent with each other as well as the treatment findings throughout the record," and the ALJ assigned "some weight" to these opinions [R. 18]. Plaintiff argues that the ALJ did not consider the limitations found by Dr. Toor by concluding that plaintiff could perform light work (Docket No. 16, Pl. Memo. at 20).

Defendant argues the ALJ properly weighed Dr. Toor's opinion (Docket No. 22, Def. Memo. at 17-20). Dr. Toor examined plaintiff in 2008 and found plaintiff had difficulty in twisting, bending or extending his neck [R. 224] but found in 2015 that plaintiff had a normal

16

gait [R. 369] (Docket No. 22, Def. Memo. at 18). Dr. Toor found in 2015 that plaintiff was in moderate pain [R. 369].

By assigning only "some weight" to Dr. Toor's opinion, it is not clear which parts of that opinion were accepted and which were not. Again, with the collateral effect on the first ALJ's decision, plaintiff now should be deemed disabled and Dr. Toor's opinion is consistent with that earlier finding. Plaintiff's motion on this ground also is **mooted** with the collateral estoppel effect of the 2009 disability decision.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **GRANTED**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **DENIED**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
June 13, 2019